On Rehearing.
BELL, Judge ad -hoc.
The facts of this case, as appear in the petition for injunction herein filed, have been substantially set forth in the original opinion of this court. It is not necessary to restate them, except to observe the additional fact alleged in the petition and reiterated in appellant’s application for rehearing, to the effect that the adoption of the ordinance sought to be enjoined would result in a contract with the Vazoo & Mississippi Valley Railroad Company. It is alleged that plaintiff would thus suffer great and irreparable injury, loss, and damage to himself and to all other residents, citizens, and property taxpayers of the city of Baton Rouge. The law upon which petitioner relies is found in the statutes of Louisiana. Act 79 of 1S96 and Act 76 of 1914. The latter act is identical with the former, except to • increase the population in cities and towns, to which the law shall apply, from 25,000 to 75,000.
Act 76 of 1914 reads as follows:
“Be it enacted by the General Assembly of the state of Louisiana, that the cities and towns of this state (having.a population of less than 75,000 persons) shall have authority to grant to railroads and other corporations the right to use and occupy the streets and alleys therein and to obstruct same, or part thereof, with buildings necessary to and used by said corporations: Provided that prior to said grant a majority of the property taxpayers in said city or town voting at an election to be called for such purpose, shall approve said proposed grant: Provided further that in making said grant, the said cities and towns, through their councils, shall impose such conditions and make such charges as they may deem fit.”
The petition for rehearing upon which this matter is now reconsidered contends for ■ error in the decree of the court dismissing the injunction and affirming the judgment appealed from, in that the opinion holds against the delegated powers or jurisdiction of the courts of this state to restrain mu-, nicipalities of the state from contracting ■ with railroads or other public corporations, regarding franchises for the use and oc-' cupancy of its public streets, beyond the limits of municipal authority and in viola *795 tion of specific prohibitory statutes.' It is further urged that the court has erred in holding that the granting of such relief under such circumstances would be to interfere unnecessarily with the action, or merely contemplated action, of municipal councils in the exercise of their legislative powers and functions; and in further holding that petitioner’s remedy lies, -not by injunction to prevent the contemplated action, but by suit for its annulment when consummated. It is finally submitted in the application for rehearing that the passage of the proposed ordinance would work an injury, because its adoption would complete a contract which the municipality, in the interest of „taxpayers, is prohibited by law from making, unless and until the taxpayers themselves have authorized the same.
The allegations of fact in’ the original petition must be taken as true in cbnsidering the exceptions herein filed' as to right or cause of action in petitioner to institute this proceeding. The law as above' quoted is the source from which plaintiffs’ cause of action, coupled with alleged facts, must arise, provided the statute pleaded is found applicable to the instant case.
 It is contended by learned counsel for defendants that neither Act 79 of 1896 nor Act 76 of 1914, as substantive laws, is applicable to the city of Baton Rouge because that city was incorporated by special act of the Legislature and particularly empowered by section 20 of Act 169 of 1898 to grant to railroads and like corporations the right to use its streets without referendum of any sort to its property taxpayers. It is also contended that, as neither of the above general statutes contain repealing clauses, it cannot be held that section 20 of Act 169 of 1898, though in conflict with, is in any manner repealed by, them. We see no merit in either of these contentions as applied' to the ease before us. This court will take judicial cognizance of the evident purpose of the. Legislature which impelled enactment of these general statutes, doubtlessly intended to apply to cities and towns (Baton Rouge included) as are therein designated.
The well-known rule of statutory construction from which repeal by implication arises, is set forth in 36 Cyc. verbo, VI. Repeal, Suspension and Revival, p. 1079 (B), and has been expressed by this court in State v. Henderson, 120 La. 542, 45 South. 433, as follows:
“Whilst it is settled- that repeals by implication are not favored, it is equally well settled that, in determining whether one law conflicts with another, it is necessary to consider the purposes of both, and if it appears that the purpose of the law last enacted is to cover the whole subject-matter dealt with, and to modify or supersede those previously enacted, then ■the modification or supersession results, and must be declared. Sutherland on Statutory Construction, § 153; Id., § 154; Sedgwick on Construction of Laws, p. 105; King v. Cornell, 106 U. S. 395.”
Though it was contended in the case of Louisiana Western Railroad Co. v. City of Crowley, 142 La. 640, 77 South. 486, that the amendment of a special statute does result from the enactment of a later general law on the same subject, and while the court noted the inapplicability of the rule to the particular charter of that city, it cannot be said that this court thereby intended to hold that the identical general law now, as in that case under consideration, had not the effect of repealing special prior legislation on this same subject. On the contrary, in the Crowley Case, this court said:
“When we consider that, before the' enactment of the statute of 1896, the law authorized municipal councils to allow railroad companies to use the streets of towns and cities, without consulting the property taxpayers, that statute, declaring, that municipal councils may grant the use of the streets for raiiroad-tracks, provided a majority of’ the property taxpayers approve the grant, is not entitled to any other construction or interpretation than that mu *797 nieipal councils were thereby forbidden to grant railroad companies the right to use the streets for railroad tracks without the approval of a majority of the property taxpayers voting at an election called for that purpose. * * * Our opinion, on the contrary, is that the Act No. 79 of 1896 forbade the town council of Crowley to make an irrevocable grant of the 'use or occupancy of the streets of the town for a railroad track, without the approval of a majority of the property taxpayers voting at an election held for that purpose.”
There is no room for doubt that Act 76 of 1914 .(also Act 79 of 1S96) was enacted by the Legislature to repeal all prior special laws in conflict therewith and under which any cities or towns throughout the state, within the designated number of population, might have been governed. It follows, therefore, that the petition fully supports a right and canse of action in petitioner as a property taxpayer, to invoke the relief prayed for.
That courts, in the exercise of their equity jurisdiction, will enjoin municipalities acting, or threatening to act, beyond the scope of their delegated powers, or in disregard of, particular powers which are specifically denied by statutory prohibition, is well settled by abundance of authority. It cannot be said that sound jurisprudence, pronouncing against interference by courts with legislative functions of a municipal body, is in any manner at variance with this doctrine. The minority cases which so intimate, are, upon examination, found to have disregarded the clear distinction between what is generally delegated as legislative authority, or naturally implied as such, and what is particularly withheld from the municipality and reserved by statutory declaration to the citizen or taxpayer. The distinction is clearly stated in High on Injunction, pars. 1241 and 1247, as follows:
“While equity will not enjoin the action of municipal corporations while proceeding within the limits of their well-defined powers as fixed by law, it has undoubted jurisdiction to restrain them from acting in excess of their authority and from the commission of acts which are ultra vires.
“In determining the right to preventive relief against enforcement of municipal ordinances, a distinction has been drawn between cases where the municipal authorities are acting within the limits of the powers conferred upon them by law, and cases where they are guilty of a plain departure from such powers. And while in the former class of cases equity will not interfere with the exercise of a public or political power vested in the officers of a city government, in the latter class relief may be allowed. * * * So it has been held that the common council of a city may be enjoined from enforcing an illegal ordinance or order for the vacation of a street which has been made without the necessary consent of the requisite number of property holders. Spiegel v. Gansberg, 44 Ind. 418. And it is held that proceedings by a municipal corporation under an ordinance which is entirely void may be restrained. Mayer v. Rodecke, 49 Md. 217.”
In Frewin v. Lewis, 18 Eng. Ch. (4 Mylne & Cr. 249, 255) 249 (1838), Lord Cottenham said:
“So long as those public functionaries strictly confine themselves within the exercise of those duties which are confided to them by law, this chancery court will not interfere * *. * to see whether any regulation they make is good or bad; but if they are departing from that power which the law has vested in them, if they are assuming to themselves a power over property which the law does not give them, this court no longer treats them as acting under the authority of their commission, hut treats them, whether they he a corporation or individuals, merely as persons dealing with property without legal authority. While the court avoids interfering with what they do while keeping within the limits of their jurisdiction, it takes care to confine them within those limits; if they go beyond the line of their authority and infringe or violate the rights of others, they become, like all other individuals, amenable to the jurisdiction of this court by injunction.” Pootnote, Dillon on Municipal Corporations (4th Ed.) vol. 2, p. 1118.
 It is not material in this case that the acts sought to be enjoined are merely contemplated or threatened, or that the injury alleged has not been received, or is only special or personal injury as distinguished from a public one befalling all other property taxpayers. A plea of prematurity to the action is not conceivable when the threatened oi impending, violation, if consummated, would be wholly ultra vires. A denial of relief will not be justified on the ground that the injury, if suffered, or the rights, if violated, may be cured or restored 1 by subsequent action to annul or avoid. This doctrine carried to its extreme effect may be productive of innumerable suits where ultra vires grants may compel the property taxpayer to proceed, not' against the liberal grantor, but the innumerable grantees, whom the generous municipality has blindly favored to his prejudice. See State ex rel. Abel v. Gates, 190 Mo. 540, 89 S. W. 881, 2 L. R. A. (N. S.) 152 ; Trading Stamp Co. v. Memphis, 101 Tenn. 181, 47 S. W. 136 ; Poppleton v. Moore’s, 62 Neb. 855, 88 N. W. 128 ; People v. Sturtevant, 9 N. Y. 263, 59 Am. Dec. 536 ; Roberts v. Louisville, 92 Ky. 95, 17 S. W. 216, 13 L. R. A. 844 ; People ex rel. Negres v. Dwyer, 90 N. Y. 403 ; In re North Jersey St. Ry. Co. v. South Orange Tp., 58 N. J. Eq. 83, 43 Atl. 53.
In Poppleton v. Moore’s, 62 Neb. 851, 88 N. W. 128, the Supreme Court of Nebraska considered issues similar to those before us, and observed in its opinion the following facts:
“It must be conceded that no special damage, as distinguished from public wrong, is shown in this case. It must be conceded that the only action complained of is the taking of steps to pass an ordinance, and the only thing enjoined against is the passage of an ordinance, which involves the acceptance of the waterworks’ company’s proposition.”
The court then proceeds to hold, in part, as follows:
“It hardly seems, however, that this is or can be treated as simply a legislative act. It is in fact an act. entering into a new contract with the water company. It is not by any ' means simple legislation. The allegations as to the manner in which plaintiff will be affected by it seem amply to disclose such an interest as a court of .equity should protect against an unauthorized action of municipal authorities. * * * The proposed action on the city’s part involves the entering into, or, rather, continuing in, contractual relations materially affecting the interests of citizens, and is an extension of a franchise not only unauthorized, but forbidden, by the city charter. It would seem to warrant the trial court’s interposing by injunction.”
On rehearing (67 Neb. 388, 93 N. W. 747), the court, following its original opinion, said:
“Rehearing was requested in this case on two grounds. In the first place, it was urged that the former opinion herein (62 Neb. 851 [88 N. W. 128]) is mistaken in holding that there was need for the intervention of equity to prevent the passage of the ordinance in question; that, as suggested in that opinion, if void it would do no harm, and if valid, its passage could not be enjoined. It was claimed that the only ground for injunction was that the proposed action of the council was ‘ultra vires,’ and, if so, the proposed action would be harmless, and there should be no injunction. It is true that the special and irreparable injury to the complainant is, as was stated in the former opinion, somewhat hard to find¡” but that question was somewhat carefully considered at that time, and it is believed that the conclusion reached was in accordance with the general doctrines, as to which the authorities do not entirely agree, but which are stated very forcibly in Dillon, Municipal Corporations (4th Ed.) § 922: ‘The proper parties may resoi’t to equity, and equity will, in the absence of restrictive legislation, entertain jurisdiction of their suit against municipal corporations and their officers when these' are acting ultra vires, or assuming or exercising a power over the property of the citizen, or over a corporate property ox-funds, which the law does not confer upon them, and where such acts affect injuriously the property owner or the taxable inhabitant.’ * * * If -the effect of the ol'dinance is to produce an extension of an absolute franchise, then its passage is forbidden, without a submission to the vote of the people, and the proposed action of the council is ultra vires. As before suggested, the plaintiff alleges that sucli was the intention and effect. It must be acknowledged *801 that, if it has not that effect, it has none at all.”
In 22 Cyc. verbo, Injunction, 741, the subject under discussion is treated as follows:
“Preventive injunction commands a party to refrain from doing an act. Injunctions of this character act necessarily upon an unperformed and unexecuted act -and prevent a threatened, but nonexistent, injury. Schubach v. McDonald, 179 Mo. 163, 78 S. W. 1020, 65 L. R. A. 136, 101 Am. St. Rep. 452.”
22 Cyc. 743:
“There is no doubt that the court has jurisdiction to issue preliminary mandatory injunctions, and is proper to do so, in cases of extreme urgency, where the right is very clear indeed and where the circumstances of the relative inconvenience bears strongly in complainant’s favor.' New Iberia Rice Milling Co. v. Romer, 105 La. 439, 29 South. 876 ; Black v. Good Intent Towboat, 31 La. Ann. 497.”
In State v. City of New Orleans, 149 La. 788, 90 South. 196, refusal by this court, of writs of prohibition, was predicated upon the conviction that the trial court was clearly vested with jurisdiction to restrain by injunction the municipal council from contracting with regard to street railway franchises, beyond what was alleged to be the limit of municipal authority. The same principle is presented in the instant case, with as forceful reasons for its application to the facts set forth in plaintiff’s petition.
In the case of Cruse v. Police Jury of La Salle Parish, 151 La. 1056, 92 South. 679, this court, on rehearing, reversed its former ’ judgment and held that, while ■ even police juries have both legislative and judicial functions with which courts should not ordinarily interfere, where such bodies exceed the powers delegated them under the vote of the taxpayers, injunction should issue. See, also, Sugar v. City of Monroe, 108 La. 677, 32 South. 961, 59 L. R. A. 723. A fortiori, where the power to function is not even limited or made discretionary by implication or otherwise, but is wholly withheld / from the municipality, town, or police jury until property taxpayers have spoken, should courts intervene to prevent the ultra vires a!cts of such bodies, done in disregard of rights particularly reserved to the taxpayer.
Harrison et al. v. City of New Orleans al., 33 La. Ann. 222, 39 Am. Rep. 272, State ex rel. Behan v. Judges, 35 La. Ann. 1075, and New Orleans Elevated Railway Co. v. Mayor & Council of New Orleans, 39 La. Ann. 127, 1 South. 434, are not in conflict with the views herein expressed, for the reason that in the cited cases it appears that acts of the 'municipality attempting, respectively, to grant trackage privileges, or to impeach a city officer, or to repeal a former ordinance were all recognized to be within the inherent and discretionary legislative functions of the city of New Orleans, under powers not specially denied to it, but which are denied in the instant case. In State v. City of New Orleans, 151 La. 24, 91 South. 533, for reasons similiar to those found in the first and last of the above-cited cases, exceptions of no cause of action, rather than of jurisdiction, were maintained, and the city’s right to permit the traction company higher rates than those in its original franchise was recognized. The doctrine now applied to the case before us is well stated in Trading Stamp Co. v. Memphis, 101 Tenn. 181, 47 S. W. 136, as follows:
“There is a broad distinction between the exercise of legislative authority when the power or jurisdiction to exercise it has been conferred by law, and an attempt to legislate upon matters clearly ultra vires. Where there is power and authority conferred by law to do any legislative act, the discretion of the council cannot be controlled, but when there is no legislative authority or power, injunction will lie. A municipal corporation has no discretion to do any act which is clearly illegal and beyond its power.”
In the instant case, under the facts -as alleged, and because of the natural results *803 arising from the letter of the statute pleaded, it may be said that the functions of the municipal council of the city of Baton Rouge is purely executive and administrative in carrying out the mandatory directions of the property taxpayers, when, but not until, they have spoken.
For these reasons, the former decree of this court is set aside, the judgment appealed from is avoided and reversed, and- the exceptions of want of jurisdiction in this court, of prematurity and of no right or cause of action, are hereby overruled; and it is ordered that this case be remanded to the district court for further proceedings not inconsistent with the foregoing opinion; defendants tb pay costs of this appeal, and all other costs to ahvait the final judgment.
OVERTON, J.,. dissents and adheres to original opinion rendered herein.
ST. PAUL, J., adheres-to original opinion.
ROGERS, J., dissents, adhering to original opinion.
WILLIAM A. BELL,- Judge ad hoc, called in because of court being equally divided in opinion.